NOTE. For a discussion of the question of jurisdiction involved in this case, see Henfield's Case [Case No. 6,360]. Judge Chase's course appears to have greatly surprised not only the bar but the community; and several years afterwards Mr. Wolcott, in a letter to Mr. King (2 Gibb's Life of Wolcott, 78), attributes the popular doctrine of the unconstitutionality of the sedition law, to what he not very courteously calls the "persuasions" of the "metaphysical" Virginia lawyers, who led Judge Chase into the belief that the United States had no common law. But the oddest part of the case is that though Judge Chase expressly denied that there was jurisdiction, and though there must have been at best a divided bench, the court, "after a short consultation," imposed a sentence of unequivocally common law stamp. The most rational interpretation is, that Judge Chase had used this "short consultation" to acquaint himself with the views of his brethren on the supreme bench, about which, after Henfield's Case, there could then have been no doubt. Chief Justice Jay, it is true, had left the bench, but that his successor, Judge Ellsworth, entertained similar views on this great question, abundantly appears from his ruling in the Case of Williams [Case No. 17,708]. In Lynch v. Clarke, 1 Sandf. Ch. 651, is to be found a very lucid exposition of the law on this question by Vice Chancellor Sandford.

---

## Case No. 16,767.

### UNITED STATES v. WRAPE et al.

[4 Cin. Law Bul. 433.]

Circuit Court, D. Indiana. June 5, 1879.

CONSPIRACY—ILLEGAL VOTING.

[In order to sustain a conviction of entering into a conspiracy to procure persons to go into another county to vote illegally, it need not be shown that illegal votes were actually cast or offered or that any person went into the other county to vote illegally.]

[This was an indictment against Henry Wrape, James Wilkerson and others for a conspiracy to commit an offence against the United States.]

GRESHAM, District Judge (charging jury). Section 5440 of the Revised Statutes of the United States declares that if two or more persons conspire to commit any offense against the United States, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable, etc. The offenses which the indictment charges the defendants with having conspired to commit are found in section 5512 of the Revised Statutes. By this it is made an offense if at any election for representative or delegate in congress, any person knowingly does any unlawful act to secure an opportunity to himself or others to vote, or knowingly aids, counsels, procures or advises any person to vote at a place where he may not be lawfully entitled to vote. Two things are necessary to constitute the crime charged, namely, the agreement or conspiracy to commit an offense, and an act to effect the illegal object. That act need not be illegal in itself. Any act which is intended to effect the object of the conspiracy, and which tends in that direction, is sufficient. An agreement between two or more persons to commit any offense against the United States is a conspiracy, within the meaning of section 5440. Conspiracies are usually entered into in secret, and need not be established by direct evidence, their existence being often inferred from circumstances. They may be formed and exist without any express agreement, written or oral, and may accomplish their object without any formal meeting of the conspirators ever taking place. It is not necessary that the parties should all be acquainted with each other, or that each should know the exact part the others are to perform. It is sufficient if all have a common illegal purpose or design, and act in pursuance of it. Persons may join a conspiracy at any time, and become responsible for everything said and done by any of the members in furtherance of the common purpose.

If the defendants were united in a joint effort to induce or persuade men to go into Jennings county and vote at said election, understanding and believing, without fault or negligence on their part, that such persons were bona fide residents of that county, and had a legal right to vote therein, they are not guilty, although mistaken as to the fact of such residence. The defendants had a right to persuade men who had acquired a legal residence in the state to remove from other counties into Jennings county, and there acquire an actual residence, even if the motive for so doing was to have the benefit of such persons' votes in Jennings county at said election. If, therefore, the defendants on trial, or any two of them, or any one of those on trial, and one or more of those not on trial, conspired together as charged in the indictment, to import or cause to be imported, per-

sons into Jennings county to vote illegally at any of the designated polling places in that county, at a congressional election, and to make and to cause and procure to be made, false and fraudulent affidavits to the effect that such persons so to be imported were in truth and in fact bona fide residents of such county, and had a lawful right to vote at and in that county, at said election for representative in congress, to induce the officers of the election to receive votes from persons known by the defendants not to be residents of such county, it being the intention of the defendants to thereby secure opportunity to such persons to vote illegally, at all or any of the designated polling places in Jennings county, and that any one or more of the defendants did any act charged in the first count of the indictment, in furtherance of the common purpose, then all the defendants so conspiring are guilty. And if the defendants conspired together to aid, counsel, procure or advise persons to go from Jackson county or elsewhere into Jennings county, to vote illegally in that county at said election for representative in congress, and in furtherance of the conspiracy did any of the acts alleged in the indictment, they are guilty. It is not essential to a conviction that illegal votes were cast or offered, or that a single person went into Jennings county to vote illegally. The illegal agreement or conspiracy and an act done by any conspirator in furtherance of it are sufficient to constitute the offense. If two or more persons agree to act in concert in aiding, procuring or importing men into a certain county, township, or precinct, to vote illegally for a representative in congress, and one of them do any act which tends to accomplish the object in view, and there stop and abandon the illegal enterprise, still their offense is complete.